# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. DUSTIN MICHAEL WHITFORD, Defendant. | Case No. CR13-0050 ORDER FOR PRETRIAL DETENTION |

On the 16th day of July, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Charles J. Williams. The Defendant appeared personally and was represented by his attorney, David Nadler.

## I. RELEVANT FACTS AND PROCEEDINGS

On June 27, 2013, Defendant Dustin Michael Whitford was charged by Indictment (docket number 2) with being a felon in possession of a firearm. At the arraignment on July 11, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on September 9, 2013.

At the hearing, Marion Police Officer Lance Miller testified regarding the circumstances underlying the instant charge.[1] On June 19, 2013, at approximately 2:50 a.m., Marion police responded to a call regarding an altercation involving a handgun. Justin Danford reported that he and Defendant's father had spent the evening and early morning hours drinking at Danford's residence. Defendant's father became intoxicated

---

[1] Miller is a Sergeant in the Investigations Division of the Marion Police Department.

1

and apparently believed he was in danger. He contacted multiple individuals, including Defendant, to pick him up at Danford's residence. At least two vehicles containing multiple passengers, including Defendant, showed up at Danford's residence. According to Danford, Defendant pulled a gun from the waistband of his pants, put the gun to Danford's head, and threatened him. After threatening Danford, Defendant and the others left.

Apparently, three vehicles left Danford's residence: a Grand Marquis (Defendant's father's vehicle), a pick-up truck, and a Crown Victoria. In responding to the area, officers were on the lookout for the three vehicles. One officer saw the three vehicles and began following them. Additional officers joined in. The officer who initially saw the vehicles stopped the Grand Marquis. The other two vehicles did not stop and turned onto a side street. Other officers followed the two remaining vehicles. The pick-up truck yielded to the officers, but the Crown Victoria led officers on a chase in a residential neighborhood at speeds of 40 to 50 miles per hour. Eventually, the Crown Victoria crashed into a yard. The male driver fled the scene on foot. Jessica Blum, the passenger in the vehicle, identified Defendant as the driver. The vehicle was searched, and officers found a methamphetamine lab, homemade fireworks, an empty nylon firearm holster, and two types of ammunition.

Law enforcement tracked Defendant with the help of a K-9 officer. Defendant was found sitting on the porch of a nearby residence. Defendant had no association with the residence. Officers found Defendant's driver's license and a methamphetamine pipe on the route from the vehicle to the porch. When interviewed by law enforcement, Defendant denied driving the Crown Victoria. He also denied being in Marion, and stated that he had an alibi, but could not give a name for his alibi witness.

Officers did not find a gun in the early morning hours of June 19, 2013. Later that morning, however, a homeowner found a holstered semi-automatic handgun under a car

near where Defendant may have been driving earlier that morning. The residence where the gun was found was a couple of blocks from where the Crown Victoria crashed. The gun was initially discovered by an individual staying at the homeowner's residence. The homeowner's wife and daughter were aware of the pursuit from earlier that morning, and believed the gun may have been connected to that incident. The homeowner then reported finding the gun to the police. The caliber and brand of the ammunition in the handgun matched the ammunition found in the Crown Victoria.

However, Sergeant Miller testified that the handgun recovered by the police was apparently not the gun Defendant allegedly used to threaten Danford. Miller testified that Danford clearly described a revolver pistol as the weapon used by Defendant to threaten him (he told officers he could see the bullets) and not a semi-automatic handgun (where the bullets would be in a clip).

According to the pretrial services report, Defendant is 29 years old. He was born in Cedar Rapids, Iowa, and has lived most of his life in Cedar Rapids. Defendant's parents and one of his brothers also reside in Cedar Rapids. Defendant has never been married, but he has two children (ages 3 and 5) from a prior relationship. Both children live with their mother in Cedar Rapids.

Defendant is currently unemployed. He last worked during the summer of 2012 as a cook at a restaurant in Cedar Rapids. According to the pretrial services report, he has performed "under the table" type work since then. Defendant suffers from asthma and is prescribed two different inhalers as treatment. Defendant has been diagnosed with mild depression. In 2012, he sought treatment at the Abbe Center for Community Mental Health in Cedar Rapids, but failed to follow through with their treatment plan. Defendant told the pretrial services officer that he has not consumed alcohol in the past 13 years. He stated that he smokes marijuana every "couple" of months, with his last use on June 19,

2013 (the date of these events). Defendant also stated that he has used methamphetamine since he was 21 years old. His last use was on June 18, 2013.

Defendant has an extensive criminal record. In September 2000, at age 16, Defendant was adjudicated delinquent for operating a motor vehicle without the owner's consent. He was paroled in October 2001. On July 23, 2002, Defendant was charged with a controlled substance violation and possession of drug paraphernalia. While that charge was pending, Defendant was charged with possession of drug paraphernalia, second degree theft, theft involving a financial instrument (eleven times), trespass, fourth degree theft, and fifth degree theft.[2] Both paraphernalia charges, the fourth degree theft charge, and one theft involving a financial instrument charge were dismissed. Additionally, three of the theft involving a financial instrument charges were withdrawn. Defendant was convicted on all the other charges. On March 17, 2003, Defendant received suspended prison terms on the controlled substance violation charge and second degree theft charge, and was placed on probation for 3 years.

On May 28, 2003, while on probation, Defendant was charged with theft of video rental property. He failed to appear for a court proceeding on that charge and an arrest warrant was issued. That charge was ultimately dismissed. On July 18, 2003, while on probation, Defendant was charged and later convicted with fifth degree criminal mischief. On September 3, 2003, a petition for violation of probation was filed against Defendant in his controlled substance violation charge and second degree theft charge. His probation was extended 1 year. On March 22, 2004, Defendant's probation was revoked, and he was sent to prison for 5 years. He was discharged from prison on August 5, 2005.

On October 10, 2005, Defendant was charged and later convicted of assault. While that charge was pending, Defendant was charged and later convicted of assault causing

---

[2] Defendant failed to appear for a court proceeding in the second degree theft charge. An arrest warrant was issued and later served on Defendant.

4

bodily injury. While the two assault charges were pending, Defendant was charged with purchasing 7,500 mg pseudoephedrine. On January 13, 2007, Defendant was charged with possession of drug paraphernalia. That charge was ultimately dismissed. On January 28, 2007, Defendant was charged and later convicted of carrying a concealed weapon. On December 18, 2007, Defendant was charged and later convicted of possession of a controlled substance. On December 9, 2008, Defendant was charged and later convicted of purchase of 7,500 mg of pseudoephedrine. He was given a suspended jail sentence and 2 years probation.

On June 26, 2009, while on probation, Defendant was charged and later convicted of driving while barred and possession of a controlled substance. On August 8, 2009, while that charge was pending, and while on probation, Defendant was charged again and later convicted of driving while barred. While on probation and while charges were pending, Defendant was also charged with assault, fifth degree theft, possession of drug paraphernalia, and a curfew violation.[3] On October 11, 2009, while on probation and while other charges were pending, Defendant was charged and later convicted with assault use/display of a weapon and carrying a concealed weapon.

On March 11, 2010, while on probation, Defendant was charged and later convicted of possession of a controlled substance precursor and four counts of purchase of 7,500 mg of pseudoephedrine. On August 23, 2010, Defendant was sentenced to 5 years in prison on the possession charge. On the same date, Defendant's probation was revoked in the 2009 assault charge. On September 27, 2011, Defendant was charged and later convicted of voluntary absence/escape. He was returned to prison on February 22, 2012. He was paroled on August 6, 2012. On October 19, 2012, Defendant absconded. On November 29, 2012, Defendant absconded again. According to the pretrial services report, Defendant's whereabouts were unknown from November 8, 2012 until June 19, 2013, the

---

[3] Defendant failed to appear for a court proceeding on the curfew violation charge.

date of the events giving rise to the instant federal charge. A petition for violation of parole was filed against Defendant on June 25, 2013.

On June 19, 2013, Defendant was charged in state court with possession of a controlled substance precursor, possession of a controlled substance, and assault use/display of a weapon. Following his indictment on the instant federal charge, these charges were dismissed. Defendant was on parole when the events giving rise to the instant federal offense occurred.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies

committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with being a felon in possession of a firearm. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(E).

Regarding the second step, there is strong evidence that Defendant was a felon in possession of a firearm on July 19, 2013. It is undisputed that Defendant is a convicted felon. In the early morning hours of July 19, 2013, Justin Danford was at home drinking with Defendant's father. Defendant's father became intoxicated and believed he was in danger. He contacted family and friends for help. Defendant and others went to Danford's house, where Defendant allegedly pulled a gun on Danford and pointed it at Danford's head. After threatening Danford, Defendant exited in one of three vehicles that left Danford's residence. Two of the vehicles were pulled over, but the third car crashed into a yard after leading law enforcement on a chase through a residential neighborhood. The passenger of the vehicle told police that Defendant was the driver. Defendant fled from the crashed vehicle on foot. He was later found sitting on a porch of a nearby house at approximately 3:00 a.m. He had no connection to that residence. Officers found Defendant's driver's license and a methamphetamine pipe on the foot path Defendant took from the crashed vehicle to the porch. An empty gun holster and ammunition were found in the crashed vehicle. The ammunition matched the brand and caliber of ammunition in a gun found later that morning under a parked car that was on the path Defendant may have traveled during the early morning car chase with law enforcement.[4]

A felon in possession of a firearm constitutes a danger to the community, particularly when the felon uses the firearm in a threatening manner. Furthermore, instead of stopping his vehicle as ordered by police, Defendant led officers on chase through a residential neighborhood, and crashed his vehicle into an individual's yard. Moreover,

---

[4] The gun that was found was apparently not the gun used to threaten Danford.

Defendant committed these acts while on parole and while on absconder status. Defendant also admitted that he is a methamphetamine and marijuana user. He has an extensive criminal record with a history of committing additional offenses while on pretrial release, probation, and parole. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released. Accordingly, there is no condition or combination of conditions that would assure the safety of the community if Defendant is released. Therefore, based on the serious nature and circumstances of the offense, his extensive criminal record, and history of committing offenses while on pretrial release, probation, and parole, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is

confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (July 11, 2013) to the filing of this Ruling (July 16, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 16th day of July, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA